UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| WILLIAM THOMAS DAVIS III, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:17-CV-51-CLC-SKL |
| ) | |
| AUSTIN SWING, TIM LOHEY and ) | |
| TONYA EDWARDS, ) | |
| ) | |
| Defendants. ) | |

# **M E M O R A N D U M**

Before the Court is Plaintiff's *pro se* amended complaint for violation of civil rights pursuant to 42 U.S.C. § 1983 [Doc. 4]. On October 18, 2017, the Court screened the original complaint and found that "Plaintiff's complaint does not name a proper defendant and as such does not appear to state any claims for relief that would survive the screening requirements of 28 U.S.C. § 1915" [Doc. 3 p. 5]. However, the Court granted Plaintiff leave to file an amended complaint in accordance with *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) (holding that "a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA") [*Id.*].

Plaintiff's amended complaint must also be screened to determine whether it states a claim entitling Plaintiff to relief or is frivolous or malicious or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) and § 1915A. If the amended pleading does not state a claim, is frivolous or malicious, or seeks monetary relief from a defendant who enjoys immunity, the entire suit must be dismissed. For the reasons discussed

below, this action will proceed only as to Plaintiff's Eighth Amendment claims against Defendants Lohey and Edwards.

## I. BACKGROUND

In his amended complaint, Plaintiff brings suit against Defendants Austin Swing, Tim Lohey and Tonya Edwards [Doc. 4 p. 1]. Plaintiff asserts that he has not received proper medical care, leading to severe pain and suffering in his knee [*Id.* at 4–6].

Plaintiff alleges that on June 30, 2017, he injured his knee while climbing into the top bunk of the bed in his cell [*Id.* at 4]. On July 1, 2017, he was examined by a nurse at the Bedford County Jail, who scheduled Plaintiff a visit with Doctor Matthews, a doctor at the Bedford County Jail, for July 13, 2017 [*Id.*]. When he met with the doctor, Plaintiff claims that Doctor Matthews told him that he had a torn meniscus in his knee and would notify Defendant Lohey immediately of Plaintiff's need for surgery [*Id.*]. Additionally, Plaintiff claims that Doctor Matthews documented the need for surgery in Plaintiff's file, and told a nurse to ensure that Plaintiff would be placed in a bottom bunk [*Id.*].

Plaintiff then claims that he contacted Defendant Lohey, head jail administrator at the Bedford County Jail, several times to try and arrange a doctor's visit and a move to a lower bunk [*Id.* at 5]. Plaintiff alleges that on August 17, 2017, Defendant Lohey wrote that nothing was written regarding Plaintiff being scheduled for surgery, that he did not qualify for a furlough, and directed Plaintiff to talk to his attorney [*Id.*]. Plaintiff's attorney later informed him that he had spoken with Defendant Andrews, head nurse at the Bedford County Jail, who stated that Plaintiff did not need emergency surgery [*Id.*].

Defendant Andrews claimed that Defendant Lohey was responsible for releasing Plaintiff for surgery, while Defendant Lohey told Plaintiff that it was not his decision [*Id.* at 6]. When

2

Plaintiff questioned Defendant Andrews, she stated Plaintiff's family would have to schedule a doctor's visit outside of the jail [*Id.*]. After Plaintiff's sister scheduled a doctor's visit and informed jail officials on September 27, 2017, Plaintiff claims that he spoke to "the nurse," who claimed that she knew nothing about the scheduled visit [*Id.*]. Plaintiff's sister then contacted Bedford County Jail officials again on October 18, 2017, and spoke to "the nurse" about Plaintiff's scheduled doctor's visit [*Id.*]. However, Plaintiff claims that he has yet to be taken to his scheduled doctor's visits [*Id.*]. Plaintiff also brings suit against Defendant Swing, Sheriff of Bedford County, in his role as "overseer" of the jail, claiming that Plaintiff's sister contacted Defendant Swing about the lack of medical care [*Id.*]. Ultimately, Plaintiff claims that he has not yet received surgery, and requests monetary damages for his pain and suffering [*Id.* at 6–7].

## II. ANALYSIS

### A. Screening Standard

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss those that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See Benson v. O'Brian*, 179 F.3d 1014, 1015–16 (6th Cir. 1999) ("Congress directed the federal courts to review or 'screen' certain complaints *sua sponte* and to dismiss those that failed to state a claim upon which relief could be granted [or] . . . sought monetary relief from a defendant immune from such relief."). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). However, *pro se* pleadings filed in civil rights cases must be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

To state a claim under 42 U.S.C. § 1983, the plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998); *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *see also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere."). In other words, the plaintiff must plead facts sufficient to show: (1) the deprivation of a right, privilege, or immunity secured to him by the United States Constitution or other federal law; and (2) that the individual responsible for such deprivation was acting under color of state law. *Gregory v. Shelby Cty.*, 220 F.3d 433, 441 (6th Cir. 2000).

### B. Official Capacity Claims

Plaintiff has filed suit against Defendants Austin Swing, Bedford County Sheriff, Tim Lohey, Bedford County Jail administrator, and Tonya Edwards, head nurse at the Bedford County Jail. The Sixth Circuit has made clear that a suit brought against a public, government official will not be construed as seeking damages against a defendant in his individual capacity unless the claim for individual liability is clearly and definitively set forth in the pleading. *Perlfrey v. Chambers*, 43 F.3d 1034, 1038 (6th Cir. 1995); *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 383 (6th Cir. 1993). Generally, absent any indication a defendant is being sued in his individual capacity, courts must assume the defendant is being sued only in his official

capacity as an employee of the government entity. *Whittington v. Milby*, 928 F.2d 188, 193 (6th Cir. 1991). Therefore, Plaintiff's claims against Defendants Swing, Lohey and Edwards are brought against them in their official capacities only.

### C. Supervisory Liability

Plaintiff's allegations seek to hold Defendant Swing liable based on his supervisory position as the Bedford County Sheriff. However, to establish a claim for damages, Plaintiff must show that each Defendant upon whom he seeks to impose liability, through that Defendant's own conduct, has violated Plaintiff's constitutional rights. *See Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014) ("A critical aspect of the § 1983 . . . universe is that to be held liable, a plaintiff must demonstrate 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)); *see also Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right.") (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)).

The requirement to plead that a defendant was personally involved arises because "[section] 1983 liability cannot be imposed under a theory of respondeat superior." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (internal citation omitted). To the extent that Plaintiff seeks to hold Defendant Swing liable based on his supervisory role as jail administrator, a theory of supervisory liability is unacceptable in a § 1983 case. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.");

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (finding that liability under § 1983 may not be imposed simply because a defendant "employs a tortfeasor"). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676. A plaintiff must show "that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (internal citation omitted).

Plaintiff's complaint fails to allege that Defendant Swift violated any of Plaintiff's constitutional rights, or that he "directly participated" in or "encouraged" violations by the jail staff. *Id.* Additionally, Plaintiff's allegations that Defendant Swing failed to respond to his grievances are insufficient to show personal involvement in any alleged wrongdoing on the part of Bedford County jail employees. *See Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (explaining that "[s]upervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (finding that knowledge of a prisoner's grievance and a failure to respond or remedy the complaint was insufficient to impose liability on supervisory personnel under § 1983). Without factual contentions to support "the reasonable inference that the defendant is liable for the misconduct alleged," Plaintiff fails to state a claim upon which relief may be granted against Defendant Swing. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, Defendant Swing will be **DISMISSED** as a Defendant in this action.

    **D.    Deliberate Indifference Claims**

"[D]eliberate indifference to [the] serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,'" which violates the Eighth Amendment. *Estelle v.*

*Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). An Eighth Amendment claim is composed of two parts: (1) an objective component, which requires a plaintiff to show a "sufficiently serious" deprivation; and (2) a subjective component, which requires a showing of a sufficiently capable state of mind, one of "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994).

Deliberate indifference is illustrated by a prison official who acts or fails to act despite knowledge of a substantial risk of serious harm to an inmate under his care. *Id.* "[W]here a prisoner receives some medical care and the dispute is over its adequacy, no claim has been stated." *Bryan v. Washington Cty. Sheriff's Dep't*, No. 2:10-cv-169, 2012 WL 523653, at *2 (E.D. Tenn. Feb. 15, 2012) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). However, "[w]hen prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates [a] constitutional infirmity." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). Further, "a prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering." *See Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998) (citing *Boretti v. Wiscomb,* 930 F.2d 1150, 1154–55 (6th Cir. 1991)); *see also Estelle*, 429 U.S. at 103 ("[T]he denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose.").

Based upon the medical diagnosis of Plaintiff's knee injury, the Court can infer that Plaintiff's injury was one of a serious nature, and thus meets the objective component necessary to show deliberate indifference. Read in the light most favorable to Plaintiff, his complaint states a colorable claim of deliberate indifference to his serious medical needs against Defendants

Lohey and Edwards. *See Blackmore*, 390 F.3d at 899 ("When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment . . . for *non-medical reasons*, their conduct in causing the delay creates the constitutional infirmity."). Even if the Defendants were initially unaware of Plaintiff's need for surgery, Plaintiff alleges that he and his relatives contacted both Defendants several times regarding the need for surgery, the proper procedure to schedule surgery outside of the jail, and then regarding the scheduled surgeries. *See Newsome v. Peterson,* 66 F. App'x 550, 551 (6th Cir. 2003) (citing *Estelle*, 429 U.S. at 104–05) ("[D]eliberate indifference to serious medical needs of prisoners [can occur] . . . whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.").

At this point in the proceedings, the Court does not find that Plaintiff's allegation of deliberate indifference is frivolous, malicious, or does not state a claim which would entitle Plaintiff to relief under § 1983. Thus, the allegations of deliberate indifference for failure to provide medical care will advance beyond the PLRA screening phrase, and process shall issue as to Defendants Lohey and Edwards.

## III. CONCLUSION

For the reasons set forth above, the Court will **DISMISS** Defendant Swing as a party to the current suit for the failure to state a claim under § 1983. Accordingly, this action will proceed only as to Plaintiff's claims of deliberate indifference under the Eighth Amendment against Defendants Lohey and Edwards.

The Clerk will be **DIRECTED** to send Plaintiff a service packet (a blank summons and USM 285 form) for Defendants Lohey and Edwards. The Court will **ORDER** Plaintiff to

complete the service packet and return it to the Clerk's Office within twenty (20) days of receipt of this Memorandum and Order. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service. Fed. R. Civ. P. 4. Plaintiff is forewarned that failure to timely return the completed service packet could jeopardize his prosecution of this action.

Defendants Lohey and Edwards **SHALL** answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, judgment by default may be entered against him.

The Court will **ORDER** Plaintiff to immediately inform the Court and any Defendants or their counsel of record of any address changes in writing. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

Finally, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Fed. R. App. P. 24.

**AN APPROPRIATE ORDER WILL ENTER.**

**/s/**
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**