# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT WINCHESTER

| | | | |
|---|---|---|---|
| WILLIAM THOMAS DAVIS, III, | ) | | |
| Plaintiff, | ) | | |
| v. | ) | No. | 4:17-CV-51-CLC-SKL |
| TONYA EDWARDS, | ) | | |
| Defendant. | ) | | |

## MEMORANDUM OPINION

Plaintiff William Thomas Davis, III, initiated this pro se civil rights for violation of 42 U.S.C. § 1983 against Defendant Tonya Edwards in her official capacity as an employee of Southern Health Partners ("SHP"), alleging the denial of constitutionally adequate medical care at the Bedford County Jail.[1] Before the Court is Defendant Edwards' motion for summary judgment [Doc. 33], and Plaintiff's response thereto [Doc. 38].

## I.  PLAINTIFF'S RELEVANT ALLEGATIONS

On June 30, 2017, Plaintiff injured his knee while climbing off of his top bunk and was examined by a nurse at the Bedford County Jail the following day [Doc. 4 at 4]. According to Plaintiff, the nurse scheduled Plaintiff to be examined by Dr. Kenneth Matthews, who upon examining Plaintiff almost two weeks later, stated that Plaintiff had suffered a torn meniscus and needed surgery [*id.*]. Dr. Matthews also told the nurse to ensure that the guards placed Plaintiff in a bottom-level bunk on the lower tier of the jail [*id.*].

Plaintiff asserts that Defendant Edwards thereafter told his attorney that Plaintiff did not need emergency surgery, and she informed Plaintiff's family that it was their responsibility to

---

[1] Additional Defendants were previously dismissed [*See* Docs. 6 & 36].

schedule a doctor's visit for Plaintiff [*id*. at 5–6]. Plaintiff maintains that his sister scheduled Plaintiff a free-world doctor's visit, but that the "nurse" claimed to know nothing about the visits [*id*. at 6]. Plaintiff alleges that his sister thereafter spoke to the "nurse" about a rescheduled doctor's visit, but Plaintiff was never taken to his appointment [*id*.]. Plaintiff contends he repeatedly sought surgery and a bottom-level bunk, but that he was denied both [*id.* at 5]. He requests monetary damages for his pain and suffering [*id*. at 6–7].

II. **SUMMARY JUDGMENT STANDARD**

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd*, 224 F.3d 797, 800 (6th Cir. 2000). "Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611 (6th Cir. 2009) (quoting *Mazur v. Young*, 507 F.3d 1013, 1016 (6th Cir. 2007)).

The moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). In order to successfully oppose a motion for summary judgment, a party "must set forth specific facts showing that there is a genuine issue for trial" and "may not rest upon the mere allegations or denials of his pleading." *Anderson v. Liberty Lobby, Inc.*, 47 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).

In considering a motion for summary judgment, once the court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent*

2

*supportable by the record*, . . . [the ultimate decision becomes] . . . a pure question of law." *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

### III. DISCUSSION

#### A. DELIBERATE INDIFFERENCE

##### 1. Governing Law

The law provides that a prisoner has a constitutional right to medical care that is infringed when a defendant's failure to provide adequate treatment is the result of "deliberate indifference to a prisoner's serious illness or injury." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Deliberate indifference has two components that a plaintiff must prove: (1) that the prison official knew that the inmate faced a substantial risk of serious harm [the objective factor]; and (2) that the official disregarded that risk by failing to take reasonable measures to abate it [the subjective factor]. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

To satisfy the objective component, the deprivation alleged must be sufficiently serious; that is, it must either be obvious to a layperson or supported by medical evidence. *See Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897–98 (6th Cir. 2004). The subjective component requires that the defendant have a "sufficiently culpable state of mind," which is akin to a mental state of criminal recklessness. *Farmer*, 511 U.S. at 834, 839–40.

Additionally, where a prisoner has received some medical care, and his dispute is over the adequacy of the treatment provided, "[t]he plaintiff must present enough evidence for a factfinder to evaluate the adequacy of the treatment provided and the severity of the harm caused by the

3

allegedly inadequate treatment." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). Moreover, where the adequacy of treatment is challenged, a plaintiff must clear the "high bar" of demonstrating that the medical professional "*consciously* exposed the inmate to an *excessive* risk of *serious* harm." *Id*. (emphasis in original) (citation omitted).

### 2. Defendant's Summary Judgment Proof

In support of her motion for summary judgment, Defendant has produced the declaration of Dr. Kenneth Matthews, an independent contractor who serves as a treating physician at the Bedford County Jail [Doc. 33-1 at ¶¶ 1, 4]. Dr. Matthews, who is Board certified by the American Board of Preventive Medicine in Public Health/General Preventive Medicine and Occupational Medicine, has served in correctional medicine for over eight years [*id*. at ¶¶ 2–3].

Dr. Matthews states that Plaintiff submitted a medical request on July 1, 2017, complaining that he had torn a ligament in his right knee, and that he had previously been told that he needed surgery on the knee [*id*. at ¶ 8]. In response to the nurse's observation that Plaintiff's knee was swollen, Dr. Matthews ordered an x-ray of Plaintiff's knee and ordered Ibuprofen to treat Plaintiff's pain and inflammation [*id*.]. Dr. Matthews evaluated Plaintiff on July 13, 2017, at which time Plaintiff advised him that he had suffered difficulties with his knee for years, and that he had undergone an MRI of his knee a few months earlier [*id*. at ¶ 10]. Based on his examination, Dr. Matthews advised Plaintiff that he might have a meniscus fragment and might need surgery to improve his ability to bend his knee [*id*.]. Dr. Matthews did not give any order to schedule surgery but did give orders for Plaintiff to be housed on the bottom floor and to receive a bottom bunk [*id*. at ¶ 11].

Dr. Matthews further states that Plaintiff submitted another medical request concerning his knee on July 15, 2017, stating that he had fallen and hurt his knee, and upon evaluation, Dr. Matthews determined Plaintiff's condition to be stable [*id*. at ¶ 13]. Plaintiff was advised to seek

a furlough if he wanted to obtain elective surgery for his knee, and his medical records were obtained, which showed that Plaintiff had a pre-existing tear of his meniscus [*id*. at ¶¶ 13–14].

Plaintiff again submitted a medical request on July 20, 2017, claiming to have fallen and hurt his knee [*id*. at ¶ 15]. Plaintiff was again evaluated by medical staff on July 23, 2017 and determined to be stable [*id*. at ¶ 16]. Dr. Matthews noted that Plaintiff's range of motion at that time had actually improved over his previous evaluation, indicating that the meniscus fragment might have moved, thus allowing greater mobility [*id.*]. Plaintiff was advised that he would need to obtain a furlough if he wished to proceed with the elective knee surgery, and Plaintiff reported that he could not get a furlough due to his criminal charges [*id*.]. Plaintiff refused to take Tylenol or Ibuprofen for his complaints of knee pain [*id*.].

Plaintiff again sought medical treatment for his knee on August 25, 2017, and he was seen by the medical staff on August 27, 2017, and evaluated by the Medical Team Administrator on September 2, 2017 [*id*. at ¶¶ 18–19]. He was again advised that he would need to obtain a furlough and pay for the elective surgery if he wanted such treatment for his pre-existing meniscus tear [*id*. at ¶ 19]. After this evaluation, Dr. Matthews prescribed Plaintiff Ibuprofen, and the nurse provided him with an Ace bandage upon Plaintiff's request [*id*.].

Dr. Matthews states that SHP has no policy or custom of refusing surgeries [*id*. at ¶ 22]. Dr. Matthews testifies that he had the authority to order Plaintiff's surgery if he had deemed it necessary, and that SHP would have made arrangements for that surgery [*id*. at ¶¶ 22–23].

Dr. Matthews contends that the treatment provided Plaintiff was reasonable, and that "knee surgery for [Plaintiff's] condition would be purely an elective procedure that could provide some improvement in his range of motion and could reduce his complaints of pain. But, his knee pain could be adequately treated with Ibuprofen" [*id*. at ¶ 24]. Dr. Matthews further states that

5

Plaintiff's delay in seeking knee surgery has not caused any additional injury or deterioration to his knee [*id*. at ¶ 25].

### 3. Analysis

The submitted evidence demonstrates that Plaintiff chose not to obtain surgery to treat his then-existing knee injury prior to his incarceration, and that when he did complain of problems with his knee in the Bedford County Jail, he was evaluated and prescribed medication [Doc. 33-1 at ¶¶ 8, 10–11, 14, 19]. Plaintiff was advised that surgery could likely help his limited motion but that such surgery would be an elective procedure Plaintiff would have to obtain furlough to receive [*id*. at ¶¶ 10–11, 13, 16, 19]. When Plaintiff continued to complain about his knee, medical staff re-evaluated him and prescribed him pain medication [*id*. at ¶¶ 12–13, 15–16, 18–19].

The evidence further demonstrates that neither Edwards nor SHP refused to schedule surgery for Plaintiff, as no surgery was ever ordered by the treating physician, who deemed it an elective procedure [*id*. at ¶¶ 11, 14, 23]. Plaintiff's request for more advanced medical treatment than what was provided at the Bedford County Jail is not sufficient to support an Eighth Amendment claim absent qualified medical proof that his treatment was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (citation omitted). Plaintiff has not satisfied that burden.

Additionally, even if Plaintiff had produced medical proof to establish that surgery was medically necessary, and his treatment at the jail were grossly inadequate, he would still have to introduce proof to establish that he suffered a detrimental effect from the lack of or delay in treatment. *See Rhinehart*, 894 F.3d at 737–38. Dr. Matthews expressly stated that the type of elective surgery sought by Plaintiff is not necessary to prevent deterioration of the knee, and Plaintiff has not demonstrated that he suffered any additional injury as a result of not receiving that treatment [Doc. 33-1 at ¶¶ 24–25].

### B. POLICY OR CUSTOM

#### 1. Governing Law

The Court otherwise notes that Plaintiff's claim against Defendant Edwards in her official capacity is a claim against SHP. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). SHP cannot be held liable for any injuries inflicted by its employees, but, rather, can only be held liable for its own wrongdoings. *See Baynes v. Cleveland*, 799 F.3d 600, 620 (6th Cir. 2015) (citations omitted). In order to establish liability against SHP, Plaintiff must show proof of an official policy or widespread practice or custom by SHP that deprived Plaintiff of his constitutional rights. *See, e.g., Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006); *see also Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403–04 (1997). To satisfy this burden, there must be a "direct causal link between the custom and the constitutional deprivation; that is, [the plaintiff] must show that the particular injury was incurred *because* of the execution of that policy." *Baynes*, 799 F.3d at 621 (citing *Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 508 (6th Cir. 1996)).

#### 2. Analysis

Therefore, even if Plaintiff could show a fact issue relating to deliberate indifference, SHP could not be held liable unless it was deliberately indifferent to the consequences of a policy or custom that caused the constitutional violation. *See Gregory*, 444 F.3d at 752–53 (noting deliberate indifference requires "risk of a constitutional violation arising as a result of the inadequacies in the municipal policy" as written or applied to be "plainly obvious") (citation omitted).

Plaintiff has not produced proof of any widespread practice or settled custom of denying treatment ordered by the treating physician, and Dr. Matthews has testified that no such custom or

policy exists [Doc. 33-1 at ¶ 22].  Therefore, Plaintiff cannot sustain a claim against Defendant Edwards in her official capacity, and Defendant Edwards is entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, Defendant Edwards's motion for summary judgment [Doc. 33] will be **GRANTED** and this action will be **DISMISSED**.  The Court will **CERTIFY** that any appeal from this order would not be taken in good faith.  Thus, should Plaintiff file a notice of appeal, this Court will **DENY** Plaintiff leave to appeal *in forma pauperis*.  *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

**AN APPROPRIATE ORDER WILL ENTER**.

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**